# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SANDRA L. SELLERS, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | * CIVIL ACTION NO. 16-000165-B |
| | * |
| NANCY BERRYHILL,[1] | * |
| Acting Commissioner of Social | * |
| Security, | * |
| | * |
|     Defendant. | * |

## ORDER

Plaintiff Sandra L. Sellers (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On May 25, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. Procedural History[2]

Plaintiff protectively filed her application for a period of disability, disability insurance benefits, and supplemental security income on April 29, 2013, alleging disability beginning December 12, 2012, based on bipolar disorder, PTSD, high blood pressure, diabetes, high cholesterol, depression, and anxiety. (Doc. 13-2 at 6, 10). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge David Murchison (hereinafter "ALJ") on August 27, 2014 (Doc. 12-2 at 34). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Doc. 12-2 at 50). On November 7, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Doc. 12-2 at 29). The Appeals Council denied Plaintiff's request for review on March 30, 2016. (Doc. 12-2 at 2). Therefore, the ALJ's

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF, not the page numbers assigned by the Agency. Because the transcript is divided into separate documents, the Court's citations include the appropriate CM/ECF document number.

2

decision dated November 7, 2014, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on June 1, 2017 (Doc. 22), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II. Issue on Appeal**

> **Whether substantial evidence supports the RFC for a range of medium work with the stated restrictions?**

**III. Factual Background**

Plaintiff was born on February 2, 1957, and was fifty-seven years of age at the time of her administrative hearing on August 27, 2014. (Doc. 12-2 at 34, 39; Doc. 13-2 at 6). Plaintiff graduated from high school. (Doc. 12-2 at 39).

Plaintiff worked from 1998 to 2012 as a switchboard operator at Industrial Valve and from 1995 to 1998 as a switchboard operator at Spring Hill Memorial Hospital. (Doc. 12-2 at 40; Doc. 13-1 at 15-17; Doc. 13-2 at 11, 46). At the administrative hearing, Plaintiff testified that she quit work because she felt she was being bullied at her workplace, and it caused her to be depressed and manic. (Doc. 12-2 at 40). She testified that she cannot work now due to her "bipolar disease,"

3

panic attacks, depression, confusion, and inability to concentrate.[3]  (Doc. 12-2 at 41, 49).  Plaintiff also testified that she takes medicine for bipolar disorder and goes to counseling at Alta Pointe, both of which have helped.  (Doc. 12-2 at 41, 45).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but

---

[3] At the administrative hearing, Plaintiff's counsel advised that Plaintiff's claim is based solely on her mental impairments. (Doc. 12-2 at 38).  Therefore, the Court limits its discussion to those impairments.  (Id.).

[4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.     Statutory And Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe

5

impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v.

6

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

VI. **Discussion**

> **A. Substantial evidence supports the ALJ's RFC for a range of medium work with the stated restrictions.**

Plaintiff argues that the ALJ's RFC for a range of medium work is not supported by substantial evidence because the ALJ failed to assign appropriate weight to the opinion of consulting psychologist, Dr. Pamela Starkey, Psy. D., that Plaintiff would have marked restrictions in responding appropriately to usual work situations and to changes in routine work setting. (Doc. 14 at 1-2). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has

determined the plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

In his decision, the ALJ found that Plaintiff has the severe impairments of bipolar disorder, hypertension, and diabetes mellitus. (Doc. 12-2 at 23). Even so, the ALJ found that Plaintiff has the RFC to perform a range of medium work with the following restrictions: Plaintiff is limited to no climbing of ladders, ropes, or scaffolds, no exposure to dangerous machinery or dangerous heights, has unlimited ability to understand, remember, and carryout short and simple instructions, is limited to occasional interaction with the general public, co-workers, and supervisors, and is limited to work that has minimal changes in the work setting. (Doc. 12-2 at 25). Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is unable to perform her past work as a switchboard operator (sedentary and semi-skilled); however, she could perform the jobs of laundry worker, dishwasher, and recycler, all medium and unskilled. (Doc. 12-2 at 28, 51-52).

As stated, Plaintiff argues that the RFC is not based on substantial evidence because the ALJ discredited Dr. Starkey's opinion that Plaintiff has marked difficulties in responding

appropriately to usual work situations and to changes in routine work setting. (Doc. 14 at 1-2). The Court disagrees.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological

9

consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In determining Plaintiff's RFC in this case, the ALJ

considered Plaintiff's treatment records, which included records from Alta Pointe in December 2012, showing that she was treated by Dr. Bradley Sadler, M.D., a psychiatrist, who noted her history of bipolar disorder and post traumatic stress disorder (from past abusive relationships), including two previous hospitalizations and participation in a partial hospitalization program in January 2012. (Doc. 13-3 at 48, 51). Plaintiff's treatment notes reflect that she reported sadness over a recent job loss but stated that her medications were working "ok" and that Seroquel was helping her sleep. (Doc. 13-3 at 48). Dr. Sadler noted that Plaintiff's ability to care for herself was "good," and on mental status examination, he noted that her general appearance was "appropriate" and that her behavior was "normal and cooperative," although she reported mood swings and had a sad affect. (Doc. 13-3 at 49). In addition, Dr. Sadler noted normal speech, fair appetite and sleep, no suicidal thoughts, no anxiety, unimpaired memory, normal orientation and perceptions, and fair insight and judgment, although she had impaired concentration and thoughts of persecution. (Doc. 13-3 at 49-50). Dr. Sadler diagnosed Plaintiff with bipolar disorder and assigned a Global Assessment of Functioning ("GAF") of 60.[5]

---

[5] A GAF score of 51-60 indicates that "the person has moderate symptoms (e.g., flat affect and circumstantial speech or occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends or

(Doc. 13-3 at 50-51). Dr. Sadler noted that Plaintiff was in the midst of a manic-depressive episode due to recently losing her job but was "calm, cooperative, and [did] not appear to be in imminent danger." (Doc. 13-3 at 51). Dr. Sadler assigned no functional limitations. (Id.).

In January 2013, Plaintiff returned to Alta Pointe and reported that she was "doing well" on her current medications, that she had no problems with sleeping or eating, and that she had no suicidal ideation. (Doc. 13-3 at 46). Her mental status examination findings included appropriate appearance, normal and cooperative behavior, normal mood, appropriate affect, unimpaired speech, good appetite and sleep, unimpaired memory and concentration, logical thoughts, good insight and judgment, and moderate anxiety. (Doc. 13-3 at 46-47).

---

conflicts with peers or co-workers)." Benison v. Berryhill, 2017 U.S. Dist. LEXIS 119690 *19-20, 2017 WL 3262128, *6 (S.D. Ala. July 31, 2017). Plaintiff is correct that the latest edition of the Diagnostic and Statistical Manual of Mental Disorders, "DSM-5," abandoned the GAF scale as a measurement tool. See Hartung v. Colvin, 2016 U.S. Dist. LEXIS 65855, *19 n.2, 2016 WL 2910096, *6 n.2 (E.D. Pa. May 19, 2016). For that reason, the Social Security Administration now permits ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders but instructed that "a 'GAF score is never dispositive of impairment severity,' and an ALJ should not 'give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence.'" Id.; accord Thomas v. Colvin, 2016 U.S. Dist. LEXIS 133255 *27 n.15, 2016 WL 5417202, *8 n.15 (S.D. Ala. Sept. 28, 2016). For the reasons discussed herein, the Court finds that Dr. Sadler's GAF score of 60, indicating moderate symptoms, is consistent with the substantial evidence in this case.

Thereafter, from February to October 2013, Plaintiff's treatment notes reflected sporadic reports of distress over losing her job and fear of being around others, but, overall, she was doing well on her medication; she had no side effects and no hospitalizations; she was "feeling pretty good;" she had no depression and no racing or disorganized thoughts; and her bipolar disorder was stabilized with medication. (Doc. 13-3 at 68, 70, 72, 74). While Plaintiff's treatment notes in October 2013 reflect that she was experiencing confusion and sadness and impaired concentration and memory, those symptoms were specifically related to grief over her boyfriend's death in August 2013. (Doc. 13-3 at 64-67).

In November 2013, Dr. Marianne Saitz, D.O., at Alta Pointe noted that Plaintiff reported feeling anxious and depressed about her boyfriend's death but added that her medication was helping and that she was sleeping well. (Doc. 13-3 at 59-61). Plaintiff's mental status examination findings were largely normal. (Id.). In December 2013, Plaintiff's treatment notes reflect that she was "much improved," that she had a bright smile with less anxiety and fear, and that she had normal memory and concentration. (Doc. 13-3 at 119-20, 123-24).

From February through June 2014, Plaintiff's mental status examination findings remained largely normal, and Plaintiff reported that she was doing better, although in April 2014 she

13

reported paranoid feelings and difficulty being around people. (Doc. 13-3 at 104-09, 117-18). Notably, the previous month, in March 2014, Plaintiff reported visiting a senior center and stated that she enjoyed being around others. (Doc. 13-3 at 114).

In May 2014, Dr. Pamela Starkey, Psy. D., performed a consultative psychological examination and noted Plaintiff's reports of two previous hospitalizations and three intensive outpatient programs for bipolar disorder, although none in the previous eighteen months. (Doc. 13-3 at 91-92). Plaintiff also reported being in the midst of a manic episode with racing thoughts and difficulty sleeping. (Doc. 13-3 at 92). On mental status examination, Dr. Starkey noted that Plaintiff was hypomanic with euthymic affect, but that she was alert and oriented and able to sustain focus and attention; her speech was clear and coherent; her thinking was organized; and her insight was adequate. (Doc. 13-3 at 92-95). Dr. Starkey found that Plaintiff had only mildly impaired performance on specific mental tasks, with adequate recent and remote memory functions, mildly impaired fund of knowledge, marginally adequate reasoning skills, and low average intellectual functioning. (Doc. 13-3 at 94-95). Dr. Starkey diagnosed Plaintiff with bipolar disorder and unspecified anxiety disorder, mild. (Doc. 13-3 at 95). Dr. Starkey opined that Plaintiff had moderate to marked limitations

in her ability to understand and remember simple and complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with the public, with supervisors, and coworkers, but that she had *marked* limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Doc. 13-3 at 88-89). Dr. Starkey also opined that Plaintiff's prognosis for a favorable response to treatment for psychiatric problems within the next six to twelve months was "guarded." (Doc. 13-3 at 95).

As Plaintiff acknowledges, the ALJ gave significant weight to the vast majority of Dr. Starkey's opinions. (Doc. 12-2 at 27; Doc. 13-3 at 88-89). However, the ALJ rejected Dr. Starkey's opinion that Plaintiff had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting, finding that the latter opinion was inconsistent with the substantial medical evidence in the case.[6] (Doc. 12-2 at 27; Doc. 13-3 at 89). Specifically, the ALJ noted that Dr. Starkey's opinion was inconsistent with Dr. Sadler's opinion that Plaintiff had a GAF of 60, which

---

[6] As discussed herein, the ALJ's rejection of Dr. Starkey's opinions that Plaintiff has *marked* limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting is the only basis for Plaintiff's challenge to the RFC. (Doc. 14 at 1-2).

15

indicated no more than moderate symptoms; it was inconsistent with Plaintiff's frequent reports of improvement with medication; and it was inconsistent with Plaintiff's treatment notes which regularly showed intact memory and concentration, general stability, and no need for recent hospitalization or inpatient care. (Doc. 12-2 at 27-28; Doc. 13-3 at 46-51, 60, 68-74, 104-05, 109, 114, 117-20, 123-24).

The ALJ further noted that Dr. Starkey's opinion was inconsistent with Plaintiff's activities of daily living, which included living alone, handling her own personal care needs, preparing simple meals, gardening, shopping, driving, doing laundry, going to restaurants, visiting residents at a senior center, texting her daughter-in-law, spending time with her son, watching television, handling her own finances, and walking her dog. (Doc. 12-2 at 27-28; Doc. 13-2 at 17-20; Doc. 13-3 at 95, 114).

While there is no question in this case that Plaintiff has bipolar disorder and that she experiences fluctuating mood and behavior as a result of that condition, the substantial evidence detailed above supports the ALJ's findings that her condition has improved significantly with medication. Indeed, none of Plaintiff's treating physicians has indicated any functional limitations as a result of her impairments. Because the severity of Dr. Starkey's opinions regarding Plaintiff's marked

16

limitations is inconsistent with the substantial evidence in the case, the ALJ had good cause to discredit those opinions.

The Court further finds that substantial evidence supports the ALJ's RFC for a range of medium work with the stated restrictions, namely, the restrictions to work involving only short and simple instructions, occasional interaction with the general public, co-workers, and supervisors, and minimal changes in the work setting. Based on the evidence detailed above, these restrictions fully accommodate Plaintiff's mental impairments.[7] Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the stated restrictions. Accordingly, Plaintiff's claim is without merit.

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

---

[7] As discussed, Plaintiff does not challenge the ALJ's findings related to her physical impairments in this case.

**DONE** this **11th** day of **September, 2017.**

>                     /s/ SONJA F. BIVINS
>            **UNITED STATES MAGISTRATE JUDGE**